And we'll hear you again in a few minutes, but this time with Mr. Cantor on the other side, who has been taking notes. Are you also oil? Yes. So you work in the same office? Yes, we do. You know each other? Yes. You didn't want to share the argument. Go ahead. It's my turn? No. He gets up again now. Everything I said before stands the same in this case. Okay, well then my question is if any of these people that you represent in the eight cases are not from Fujian Province, then what is the basis for us to grant the petition for review? Those cases are significantly weaker than those from Fujian Province, and the only rationale that I would ask the court to follow is each year the State Department adds more and more provinces to the list of those that are increasing their campaign to mandate and enforce a one-child policy. And if 2005 was in Lijian Province and 2006 in Fujian Province, our argument is in 2007 and 2008 it will continue in all other provinces. So we should grant a petition for review on anticipatory decisions by the other provinces? Boy, I mean, that's a rather strange argument. I certainly understand the court's... concern regarding existing evidence, but I would remind the court that this is communist China and it's extremely difficult to extract official documents from that country. So as they come out... I know, but we have to act on evidence that's before us. Okay, then I would only say that the evidence before you shows an increased enforcement of the one-child policy in Fujian Province, and based upon that and the official documents submitted with the motion to reopen, we would ask the court to remand the case back to the BIA to allow us to supplement the record for them to decide if all the evidence in total establishes a change or worsening country condition. Thank you. Chen and Cheng are both from Fujian. That's accurate. Counsel? Yes, sir. How much of a phenomenon is there? I mean, we're dealing with children born in a foreign country, in this case the United States, but presumably maybe in other countries as well. Is there some phenomenon of mass migration back to China of people who've had children born in the United States? Does that happen at all? Other than very rarely?  And now in other countries, it's just different because I had a client from Japan. She had a child in Japan. They were sent back to China, and what happened to her is what we're alleging happened. She was from Japan and she was sent to China? She was from China. She went to Japan. She had her second child. She went back. That's not before. No, of course not. I'm just relating to you that it does happen in other countries. Is there a mass removal back to China? It just seems to be very unusual that for some of the United States, other than the ones that are deported, that's really in context. These are all. That's a handful. I mean, the notion in this country of a billion three. If we send back a thousand couple of people with children, I mean, to say we can postulate what a policy, a nationwide policy, somehow they're based on a few hundred children. That sounds strange. Well, go back to Judge Greenberg's question, which is wouldn't we be encouraging more illegal aliens from China if we then said that they could have asylum on the ground that they had two children or three children here? I personally understand the slippery slope argument, and I hope that the answer is no, because our border control will prevent people from coming in here legally. That's been so good so far. I agree, but once they're here, once they're in the system, they are afforded due process rights. Before they come, no, they don't deserve any rights, and they shouldn't come here to seek these benefits of our border. But once they're here, they're in our system, it's my responsibility to advocate on their behalf, and the law gives them the right to file this application. We can send back children born in the United States that are American citizens. That's correct, but the applicants will always testify, and they have in the past, that says, if I am removed to China, I will bring my family with me. Well, if they want to do it, that's up to them. It is. They have somebody who will take the child here. The family unity normally prevents that, and people will even... Are you making a statement that there's evidence that supports that? I can only state based upon my personal opinion, and everybody that I've represented in front of immigration judges... They're all going to say, yes, we're going to bring our children back. But in fact, is there any evidence to support that that happens? I'm gullible. I believe them. Yeah, they are. Okay. Let's hear from Mr. Cantor. He may have some new insights into this issue. May it please the Court, Ethan Cantor for the Attorney General addressing the case of Zeng versus Mukasey. And I want to pick up on Judge Greenberg's question earlier about jurisdictional limitations, because in this case jurisdictional limitations figure prominently and significantly because the petitioner here is merely attempting to relitigate the merits of a claim that was previously rejected in 2002, from which he then failed to petition for review in this court, which he was required to do within 30 days. We don't have any jurisdiction over that petition. You don't have any jurisdiction over that petition. That's correct. Or any question of law or fact related to it. Under Section 242 of the INA or 8 U.S. Code 1259B9, Congress has required the consolidations of all questions of law and fact arising out of a particular case. So when the petitioner here in 2002 failed to seek review of his claim, which was that he would be forcibly sterilized in China, in his home province of China, on the basis of the three U.S. citizen children that he fathered in the United States, when he made that claim seeking reopening in 2002, which was denied, and then he failed to seek review of that in this court, any further claim related to it, indeed, it's the same claim that he then later brought in a motion to reopen in 2006, is barred on the basis of the jurisdictional limitations. Why would that be if he suddenly had new evidence of it? And filed a motion to reopen. And that's the question. Is it new evidence or evidence merely cumulative of his prior contentions? Well, if they denied it on the basis that it had no merit and there was a petition for review of that, wouldn't we have jurisdiction over the petition and say, yeah, we do have jurisdiction over the last petition for review. But in reviewing that petition, we can't question what was previously adjudicated. Wouldn't that be the politically correct way to do it? I believe that the correct approach, which adheres in the statutory scheme, would be that the statute guaranteed an opportunity to seek review of the merits of a claim, which the board did address on the merits. First, it denied the claim as untimely, but then in the alternative, found that he failed to make out a case based on objective circumstances that he would be persecuted in China. So the merits of the case were intended to be brought and considered by the board on the previous motion to reopen. When he had an opportunity, that's what the statute guaranteed, the opportunity, that he failed to avail himself of that opportunity, he then becomes barred from seeking to raise the same claim. But if the facts have changed, if his claim is, I file, I'm now filing a motion to reopen because the situation in China, country conditions have changed and therefore the conditions that were prevalent at the time of my last case are no longer the conditions that prevail. Why shouldn't he have the opportunity? He may not win, but why shouldn't he have the opportunity at least to ask the BIA, going back to Judge Greenberg's question, not for us to say, go look at the decision, look at the facts, but send it back to the BIA to decide if it wants to look at the new facts. There is a motion for change of circumstances. That's correct. And it is based on changed country conditions. That's correct. So why should we bar him from that? Because though he presented a new declaration and a letter that originated from a village committee in Changli, Fujian Province, stating that he must report for sterilization on his return, in 2002 he presented evidence in the form of his own testimony that he would be forcibly sterilized for the same reason. He's not arguing that he's going to be more sterilized. Of course not, but it was not as strong. The BIA might consider that a letter from the village elders or whoever they are stands on a different position than his own subjective testimony. We don't know that. You're asking us to deny the petition for review based on our evaluation of the evidence. Shouldn't that be something the BIA does? I think your honest question is a good one. I think it's this court's province to determine its jurisdiction. It's this court's proper scope of decision making to interpret the jurisdictional limitations that apply to immigration cases found in Section 242 or AUSC 1252. But what if he's jurisdictional if he's meeting the requirements of the statute, i.e. filing a motion to reopen and some evidence I don't know what the BIA will think of it, some evidence of changed circumstances. Why is that jurisdictional? It's jurisdictional if it is essentially the same claim. I thought you could reopen if there was new evidence. Even if the situation was the same, you now have evidence of it. That's right. If the evidence is material, previously unavailable, and relates to changed circumstances in the country of nationality and makes that a prima facie case. I don't want to belabor the jurisdictional point that we made in the argument. So I will move on to the... Are you now telling us, are you abandoning? No, I am not abandoning the argument. I am asserting that he is raising the identical claim, the identical contention. Yes, he has presented new evidence or a form in which to hold that contention, but it is identical, and for that reason, on the merits of the question of whether the board properly exercised its discretion in denying the motion, on that basis as well, the court may affirm the board because he failed to show a changed circumstance. Mr. Kenner, let me ask you. You represent the government. Yes. There's nobody representing the government in front of us in the other six cases. Does this court have the obligation, and we may, to go through each of the eight cases, not only the two we picked for argument, to see whether they're from Fujian province, whether the evidence, the status of the evidence, and whether in the one case that I mentioned, whether it's a mere discretionary decision by the board, and there's nothing we can do about it anyway? Are you saying that we should go through them? Because we don't necessarily have to decide the same thing for all eight cases. That's correct. I think the court must decide the cases individually in accordance with the board's published framework for assessing these cases, which is, is there a policy, what is the policy, are the local officials, and Your Honor was correct, that these cases the board has found must be assessed on a local basis. Indeed, not just a provincial level, but a city-by-city or village-by-village basis. Is it different, I mean, are there places in Fujian province where they are more relaxed about the number of children? Well, I can't speak to other localities. I'm most familiar with the evidence in this case pertaining to the Changle City, in which... Is that the capital of Fujian province? I don't know, Your Honor. Okay, go ahead. The board has determined, you look at the policy, has there been a violation of the policy, and whether the local officials are enforcing a violation of the policy in a way that rises to the level of persecution. And in this case, the board, in denying the motion to reopen, relied heavily on matter of JWS, which, apart from the particular evidence considered in matter of JWS, is actually more important for what the board found lacking with respect to the evidence in JWS, which proof is similarly lacking in this case. For example, the two key pieces of evidence that Mr. Zhang relied on in his motion to reopen were that he had recently learned of two neighbors back in Fujian province in Changle City who had been sterilized after having more than one baby. And secondly, that the Changle City family planning committee had responded to an inquiry by his parents as to whether or not he would be subject to the family planning laws, and they wrote a letter stating, yes, he will be, and he must report for sterilization. Now, the board's reliance on matter of JWS is important because there, the board found that in considering how these policies are enforced, that's the most important thing. And therefore, what happened to the neighbors in China is not really probative of what would happen to a returning Chinese citizen. And secondly, that even though the village committee, the local committee pronounced, you must report for sterilization, what's key is, is there any evidence as to how they're enforcing that requirement? Yes, many of the reports state you exceed the limitations. You must be sterilized. Well, there's no indication of the record as to how the letter was requested, only that it was presented on the motion. I think there is a section on fraud in the country report, however, it's not at issue here, at least the board didn't find that, but with respect to how the policy is enforced, is it enforced through means of physical coercion or by contrast, as the board pointed out, in accordance with the well-documented system of financial incentives, economic penalties and incentives. That is what the background evidence in this case shows. That is also the context for an aspect of the 05 country report relied upon by my brother council, which is, it references how women find little practical alternative to sterilization. What the board has pointed out in JWS, and this has also been highlighted by the second circuit in its child decision, is that the context for that statement is in a paragraph in the 05 report that focuses entirely on economic incentives and disincentives. Therefore, there's no indication that even in that context, the sterilization is a conclusion of any kind of forced sterilization or physical coercion. Let me ask you a question that I haven't seen in these Chinese family issues, but we get in other asylum cases. One of the issues is whether you can find another place in the country where you won't be persecuted. It's in terms of persecution. Has anybody argued at any time that even though, assuming Fujian province has a stricter application of the one child per family doctrine rule, other provinces may not, and therefore there's been no evidence that they can't relocate to, and China's a big country, to another province. Has that ever come up? I haven't seen it in the Chinese, in the family. And perhaps the reason is, if I would just venture to say that the burden is on the movement in the reopening context, and the case is judged on that evidence as to whether or not established changed circumstances or a prima facie case. So it's evaluated on the merits of the evidence presented, whereas in asylum cases that are fully litigated before an immigration judge, where, for example, past persecution may give rise to a presumption of a well-founded fear of future persecution, the regulations provide that the burden will then be transferred, I believe, to show, to the government to present evidence of reasonable relocation, and then a corresponding rebuttal burden to show that such relocation is not reasonable. I've never seen oil argue in response to petitions for review in the family planning cases, just occurred to me, in the family planning cases, that they can go to other provinces. Can I ask you a question? The BIA specifically found that there was no change in conditions, and I think clearly found as well that there was no new evidence of changed conditions, or of conditions that preexisted, but there's new evidence. What's our jurisdiction to review, and that's a finding of fact, I think. What's our jurisdiction to... Well, with regard to findings of fact, the context here is a motion to reopen, and the court is reviewing for abuse of discretion. However, with respect to subsidiary... I mean, do we have any issue that can come up, abuse of discretion? On motions to reopen, the court reviews for abuse of discretion. As to subsidiary questions of fact, the substantial evidence test would apply, putting the burden on the petitioner to show that the evidence not only shows, but compels a... And the Second Circuit held that there was inadequate evidence. The Second Circuit held... That's right. In Schau, is the court referring to Schau, the recent Schau decision? I don't know which one, but... The one that I provide to the court in a 28-J letter. The October case. Yes, yes. Well, there the court considered three cases, some which came up on direct review from the denial of asylum, one which was the denial of reopening. That's the one we're concerned with. Right. So the posture in the cases there were slightly different. How about those cases your adversary cited here that we don't have? I have not reviewed those cases. I'm not sure what he's referring to, but his characterization of it was that the Seventh Circuit had decided that the economic penalties were such that it may rise to the level of persecution. That was his counsel's characterization of it. And in that respect, I think Judge Slaviter's recollection is excellent because the Third Circuit has a decision, Lee versus Attorney General, 400 F. 3rd 157, in which this court determined that the standard  of economic deprivation is severe economic disadvantage. And in terms of the evidence in this case, the board, through its reference and reliance on JWS, did advert to the 04 and 05 country port information. Your red light's on, but why shouldn't we send it back to the BIA and let it worry about all this? You should not send it back because, and if I could just address that as a last point, counsel stating it was only after 2004 that any of this evidence became available. Well, that's not true. The record refutes that insofar as there's a country report dating back to 1998 concerning family planning and coercive population control in China. Yeah, but how you count, isn't the issue really how you count children born in this country? Because for a long time we were told, and I've had these cases for years, we were told that they don't count children born in this country toward the maximum that you can have. What we're now told is that they now count. Am I wrong? In this case, the petitioner has presented a letter from the Changli City Family Planning Council that says we're going to count them. So he's presented, at least on his motion to reopen that evidence. So why shouldn't that go to the BIA? Because it shifted the analysis to the question of how is it likely to be enforced? Assuming they do count, how will it be enforced? And that's what the BIA pointed out here, which is that there's nothing to show that it will be enforced through forcible or physical coercion. And if not, it doesn't rise to the level of persecution. It's not likely to make out a prima facie case. And the board was reasonable and properly exercised its discretion in denying the motion. Thank you very much. No, everything is clear. Thank you, Your Honor. Counsel? He gets a chance to rebut. I hope you can clarify for me, Judge Greenberg. Counsel, can I have one quick question? Yes, sir. The 2004 and 2005 country reports are actually attached to the appendix. Yes, sir. Do either one of them refer to children born in the United States who come back to China and how they're dealt with?  My only question is, do they mention that point at all? No. Does the 2006 report, which I don't have attached to either of these appendixes, does that specifically mention that issue? No, the 2007 profile is the first document that specifically mentioned that issue. And in that document, what it says and what the BIA extracted from that case, 2007 profile, not the country report, the State Department profile on asylum claims. Go ahead. That was published in June 7, 2007. What that profile states is that children born outside of China are not counted towards children born inside of China. And that's what was quoted by the BIA. But what they didn't do is read the last sentence of that quote, which says, unless they're registered into the household registration. So children are not counted towards the birth control policies unless they're registered in the household registration. If they're not registered in the household registration, they're not allowed to have an ID. They're not allowed to go to school. That's the only reference in the State Department documents that refer to children born in the United States, how they're treated in China. That's correct. And if we look at the October 10th decision by the Second Circuit on page 46, you'll read, Petitioner established that Chinese authorities would view the birth of his two sons in the United States as a violation of the population control policies. So they have recognized this. Now, if I can quickly address a couple issues. Severe economic deprivation, one to ten times an annual salary. I assert that that is severe economic deprivation. JWS, what the government hasn't pointed out is that the Second Circuit said that in this particular case, on these particular facts, we have not found that enforcement is done through coercion. But it must be decided on a case-by-case basis, and we cannot exclude or categorically include all applicants. Now, regarding authentication of documents, my last point. Yes, the country reports do say that documents from Fujian are found to be fraudulent in 60% of the time, 60% of the cases. However, what it doesn't say is that the village committee under Article 5 of the Fujian Province does have the authority to enforce the family planning. And furthermore, the documents that were used in the Guo case were found to be authentic, and that came from the village committee officials. So we cannot lump all these documents into the fraudulent category. The circumstances. I mean, the mother goes, she clearly wants them to say exactly what they said. So they say, they don't care. That helps their policy. You want a document that says we'll count them and do bad things? Here it is, we'll give it to you. Well, if I was in Italy and I asked my mother to go to the DMV here and to tell me what the rules are to get a license and how I'm allowed to, they would tell you. Well, you have to do this to get a license, you have to do this. And if you're suspended or you have an old ticket, you're not going to get a license and we're going to throw you in jail. All they're doing is reiterating what the law says. So with that, I would just ask, I would urge this Court to send the case back to the BIA. Let them do their fact-finding. Let them decide whether or not there are worsening country conditions. It's been a great pleasure to be in front of this Court. Thank you.